# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KELLY JEAN O'LEARY, | Case No.: 2:21-cv-00889-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 16, 19 |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security Administration, | |
| Defendant | |

Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 16.) The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 19, 20.) Plaintiff filed a reply. (ECF No. 21.)

For the reasons set forth below, Plaintiff's motion is granted, the Acting Commissioner's motion is denied, and this matter should be remanded for further proceedings consistent with this Order.

## I. BACKGROUND

In 2018, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning December 22, 2017. (Administrative Record (AR) 219-220, 65.)[1] The applications were denied initially and on reconsideration. (AR 121, 139, 144-147, 156-160.)

---

[1] Plaintiff and the Acting Commissioner refer to a date of January 24, 2018, but the pages they cite in the AR state that the application was completed on April 11, 2018.

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 161-162.) ALJ Norman Bennett held a hearing on August 21, 2020. (AR 80-104.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On September 29, 2020, the ALJ issued a decision finding Plaintiff not disabled. (AR 62-74.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 2-4.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ substituted his lay judgment for that of the medical sources in the record in finding Plaintiff can perform work at the medium level; (2) the ALJ failed to account for Plaintiff's limitations in concentration, persistence and pace in the residual functional capacity finding; (3) the ALJ failed to provide specific functional limitations relevant to Plaintiff's admittedly severe migraine headaches; and (4) remand is required because the ALJ's and Appeals Council's power to adjudicate this case was derived from a single agency commissioner who was removable by the President for cause, which violates the separation of powers.

The Acting Commissioner, on the other hand, argues: (1) the ALJ's RFC assessment is supported by substantial evidence; (2) the ALJ properly evaluated the prior administrative medical findings under the new framework; and (3) Plaintiff's separation of powers argument does not entitle her to rehearing of her disability claim.

## II. STANDARDS

**A. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively

presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids.[2] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a

---

[2] "[The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through September 30, 2019, and had not engaged in substantial gainful activity since the alleged onset date of December 22, 2017. (AR 67.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; migraine headaches; status post multiple strokes resulting in memory loss; traumatic brain injury; seizures; and post-traumatic stress disorder (PTSD). (AR 67.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 67.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform medium work, except she could engage in no more than occasional postural activities; she could not work at heights or around dangerous moving machinery; she was limited to simple, repetitive tasks with reasoning level 1-2; and she could have occasional contact with supervisors, co-workers and the general public. (AR 69.)

The ALJ then concluded Plaintiff did not have any past relevant work. (AR 72.)

At step five, the ALJ determined, considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: laundry worker; hand packager; and cleaner. (AR 73.) As a result, the ALJ found Plaintiff not disabled at any time from the alleged onset date of December 22, 2017, through September 30, 2019, the date last insured. (AR 73.)

**B. RFC for Medium Work**

On September 12, 2018, R. Kirby Reed, M.D., completed a disability examination report for Plaintiff and filled out a consultative examination medical source statement. (AR 567-573.) Dr. Reed opined Plaintiff could occasionally lift/carry 30 pounds and frequently lift/carry 15 pounds. She could sit/stand/walk for 6 hours in an eight-hour workday. She needs to alternate between sitting and standing. She could frequently climb ramps and stairs, and balance. She could occasionally climb ladders/scaffolds, stoop/bend, kneel, crouch/squat and crawl. She should be restricted regarding heights. (AR 571-572.)

On September 18, 2018, Gurpreet Chahal, M.D., opined that Plaintiff could occasionally lift/carry 20 pounds, and could frequently lift/carry 10 pounds. She could sit/stand/walk for about six hours in an eight-hour workday. She could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders/ropes/scaffolds. She should avoid concentrated exposure to hazards such as machinery and heights. (AR 116-117.)

On September 22, 2018, Helen C. Patterson, Ph.D., opined that Plaintiff could perform a limited range of light work secondary to her history of traumatic brain injury. (AR 113.)

On January 24, 2019, R. Dwyer, M.D., adopted the same limitations as Dr. Chahal. (AR 133-135.) On January 24, 2019, Anna M. Franco, Psy.D., affirmed Dr. Patterson's initial determination of the RFC for light work. (AR 130.)

The ALJ said that while the assessed postural and environmental limitations were generally consistent with Plaintiff's traumatic brain injury residual effects, her full motor strength and minimal sensory or neurological deficits suggest that she is capable of the medium exertional level of work with the limitations outlined in the RFC. (AR 72.)

Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

The description of medium work clearly conflicts with the medical opinions that Plaintiff could perform a range of light work (*i.e.*, that she could only frequently lift/carry up to 10 pounds).

Plaintiff argues that the SSA's consultative and state agency reviewing medical sources agreed Plaintiff could perform no more than a limited range of light work. Plaintiff contends that the ALJ had no legal authority to reject all of these opinions based on his lay review of the medical data, and "played doctor" in concluding that Plaintiff's motor strength and minimal sensory and neurological deficits showed a capacity for medium work.

The Acting Commissioner asserts that the new regulatory framework for evaluating medical opinions and other medical evidence applies in this case because the application for benefits was filed after March 27, 2017. The Acting Commissioner argues that the ALJ properly considered the supportability and consistency in assessing whether the prior administrative findings were persuasive.

The ALJ must assess all the evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

1    While the ALJ is responsible for determining the RFC, the RFC must be supported by

2    substantial evidence. "The ALJ must set out in the record his reasoning and the evidentiary

3    support for his interpretation of the medical evidence." *Tackett v. Apfel,* 180 F.3d 1094, 1102

4    (9th Cir. 1999) (citation omitted). Moreover, "the ALJ must use 'some medical evidence of the

5    claimant's ability to function in the workplace' in order to make a proper RFC assessment; '[t]he

6    ALJ may not simply draw his own inferences about [the claimant's] functional ability from

7    medical reports.'" *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) (quoting *Combs v.*

8    *Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017), and citing *Hutsell v. Massanari,* 259 F.3d 707, 712

9    (8th Cir. 2001)); *see also* POMS § DI 24510.001(A)(1) ("The RFC assessment: is based

10   primarily on medical evidence").

11   Courts have held that when the ALJ disregards (or in this case, finds unpersuasive) the

12   medical opinions in the record and instead relies on his own judgment in determining a

13   claimant's RFC, the ALJ's decision is unsupported by substantial evidence. *See Rosado v. Sec'y*

14   *of Health & Human Servs.*, 807 F.2d 292, 293 (1st Cir. 1986); *Jakubiak v. Berryhill*, 337

15   F.Supp.3d 80 (D. Mass. 2018); *Maniscalo v. Colvin,* 167 F.Supp.3d 207, 217-18 (D. Mass. Mar.

16   3, 2016); *Beyene v. Astrue*, 739 F.Supp.2d 77, 83 (D. Mass. 2010).

17   Generally, a lay person is not qualified to interpret raw medical data to determine a

18   claimant's RFC unless the impairments are so mild that they pose no significant functional

19   limitations. *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 17 (1st Cir. 1996);

20   *Rosado*, 807 F.2d at 293-94; *Jakubiak,* 337 F.Supp.3d at 85 (citation omitted); *Maniscalo*, 167

21   F.Supp.3d at 218-19; *Beyene*, 739 F.Supp.2d at 83 (citation omitted).

22   Here, the ALJ found the medical opinions regarding Plaintiff's level of work to be

23   unpersuasive. The ALJ said that those opinions were generally consistent with the residual

effects of her traumatic brain injury, but determined that her full motor strength and minimal

sensory or neurological deficits suggest that she is capable of the medium exertional level of

work. In finding all of these opinions to be unpersuasive, the ALJ apparently relied only on

Plaintiff's medical records and possibly Plaintiff's own testimony in assessing the RFC. When

the "medical findings in the record merely diagnose [the] claimant's exertional impairments and

do not relate those diagnoses to specific residual functional capabilities…[the] bare medical

findings are unintelligible to a lay person in terms of residual functional capacity." *Rosado,* 807

F.2d 293.

Plaintiff's impairments were not so mild that they did not pose any significant functional

limitations, and it was improper for the ALJ to draw his own conclusions regarding Plaintiff's

ability to perform medium work without the support of a medical assessment. Therefore, the

RFC is not supported by substantial evidence and this matter must be remanded to obtain further

evidence on this issue.

**C. Moderate Limitations in Concentration, Persistence or Pace**

At step three, the ALJ found that Plaintiff had moderate limitation with respect to

concentrating, persisting and maintaining pace. (AR 69.) In the RFC, the ALJ did not mention

concentration, persistence or pace, but instead found Plaintiff was limited to simple, repetitive

tasks with reasoning level 1-2, and should only have occasional contact with supervisors, co-

workers and the general public. (AR 69.) The ALJ noted: "Yet her mini-mental status

examinations with neurologists and treating professionals were high, such as 27/30 in January

2018, 30/30 in September 2018, 30/30 in October 2018, 29/30 in January 2019, 30/30 in May

2019, and 29/30 in September 2019." (AR 69.)

Plaintiff asserts that despite finding Plaintiff was moderately limited in concentration, persistence and pace, the ALJ failed to include any mental limitations related to concentration, persistence and pace. Plaintiff argues that the limitation to "simple repetitive tasks with reasoning level 1-2" relates to the ability to understand, remember and apply information, but not the ability to concentrate, persist or maintain pace.

The Acting Commissioner argues that the ALJ accounted for Plaintiff's moderate limitation in concentration, persistence in pace, when he limited her to simple, repetitive tasks in a low stress work setting, involving only occasional interaction with the public, coworkers and supervisors, and explained that her mini mental status examinations were high.  The Acting Commissioner also points to the ALJ's statement that a July 2019 psychological discharge summary indicated that Plaintiff received 18 treatments of biofeedback therapy with a 90% improvement rating in managing accident-related psychological symptoms, and she had a good prognosis and no other residual accident-related psychological issues.

The ALJ admits Plaintiff is moderately limited in concentration, persistence and pace, but the ALJ's RFC (AR 69), and the hypothetical posed to the VE (AR 99) do not include a limitation on concentration, persistence or pace. The question is whether the limitations in the RFC to simple, repetitive tasks and occasional contact with supervisors, co-workers and the general public adequately account for Plaintiff's moderate limitations in concentration, persistence and pace.

In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the ALJ's RFC said that the plaintiff could perform simple, routine, repetitive sedentary work, with no interaction with the public. 539 F.3d at 1173. The plaintiff argued that the RFC did not include the limitations on pace and other mental limitations identified by the doctors in her case. *Id*. In that case, Dr.

McCollum noted that the plaintiff had a slow pace in a mental RFC assessment, and said she was moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. A state agency doctor, Dr. Eather, also identified Plaintiff as having a slow pace and several other moderate mental limitations, but concluded that the plaintiff could still carry out simple tasks. *Id*. The Ninth Circuit concluded that "[t]he ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'" *Id*. at 1174. The court found Dr. Eather's assessment was consistent with Dr. McCollum's, which concluded that Stubbs-Danielson was not significantly limited in the ability to carry out short, simple instructions. *Id*.

The court held, in line with the Eighth and Sixth Circuits, that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

In *Howard*, the plaintiff also argued that the ALJ erred in failing to capture the limitations in concentration, persistence or pace by adopting an RFC that the claimant could engage in simple, routine, repetitive work. The Eighth Circuit rejected this claim because the state psychologist had concluded that despite deficiencies in pace, the claimant still could perform simple, repetitive, routine tasks. *Id*.

Here, Mark Short, Psy. D., conducted a psychological evaluation of Plaintiff. He found that Plaintiff's attention and concentration were "fair." (AR 578, 579.) He opined that she could probably understand and remember some simple but not detailed instructions and could carry out

simple and most detailed tasks without special supervision. He further opined that she would

probably be able to sustain attention and concentration for most complex, detailed as well as

simple tasks without special supervision. He said that she would have significant difficulty

interacting with others, and in responding appropriately to work pressure in coordination with

and in close proximity to others. (AR 580.)

Similar to *Stubbs-Danielson* and *Howard*, Dr. Short recognized Plaintiff's deficiencies in

concentration and attention, but nevertheless found she could understand, remember and carry

out simple tasks, and could sustain attention and concentration for most complex and detailed, as

well as simple tasks. The ALJ translated Plaintiff's condition, including her deficiencies

concentration, persistence and pace, into the concrete restrictions from Dr. Short's assessment.

Therefore, the court finds that the ALJ's RFC adequately captures the restrictions related to

concentration, persistence or pace, and the ALJ did not err in this regard.

**D. Limitations Regarding Plaintiff's Migraine Headaches**

Plaintiff argues that it is undisputed Plaintiff suffers from severe headaches, but the

ALJ's RFC finding did not account for this severe condition, such as providing for breaks, rest

periods or stress avoidance.

The Acting Commissioner argues that Plaintiff testified that Fioricet helps a lot with her

migraines (AR 93), and she consistently scored high on her mini mental health status exams. The

Acting Commissioner further contends that Plaintiff has not proven she has greater limitations in

this regard than were assessed.

The court agrees with the Acting Commissioner that Plaintiff does not point to any

medical evidence that supports greater limitations than were assessed. Specifically, she does not

cite medical evidence in the record indicating that she required the additional limitations she

1  suggests. As such, the court finds the ALJ did not err in failing to include additional limitations

2  related to Plaintiff's migraine headaches.

3  **E. Separation of Powers**

4       Plaintiff argues that under *Seila Law v. CFPB*, 140 S.Ct. 2183 (2020), the provision for a

5  single head of the SSA who is removable by the President for cause violates the separation of

6  powers. Plaintiff contends that Commissioner Saul's removal provision violated the Constitution,

7  and therefore, Saul's delegation of authority to the ALJ and Appeals Council in this case is also

8  constitutionally defective. In addition, Plaintiff contends that the ALJ decided this case under

9  regulations promulgated by Commissioner Saul when he had no authority to issue those rules. As

10  a result, Plaintiff asks the court to remand this matter for a *de novo* hearing.

11       The Commissioner of SSA is appointed for a term of six years (longer than the term of

12  the President) and may be removed from office by the President for cause ("neglect of duty or

13  malfeasance in office"). 42 U.S.C. § 902(a)(3).

14       The court takes judicial notice of the fact that Andrew Saul held the office of Social

15  Security Commissioner from June 17, 2019, until July 9, 2021, during which time the ALJ issued

16  his decision in this matter and the Appeals Council denied review.[3]

17       "The Constitution provides for separate legislative, executive, and judicial branches."

18  *Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1130 (9th Cir. 2021) (citing U.S Const. arts. I, II,

19  III.) Executive power is vested in the President. *Id*. (citing U.S. Const. art. II, § 1, cl. 1). The

20  Constitution does not contain an explicit clause regarding the President's power to remove

21  officers of the United States, but the Supreme Court held in *Myers v. United States,* 272 U.S. 52,

22  62 (1926), that the President has inherent, exclusive power to do so.

23

---

[3] https://www.ssa.gov/history/commissioners.html, last visited March 17, 2022;

In *Seila Law LLC v. CFPB,* 140 S.Ct. 2183 (2020), the Supreme Court held that the Consumer Financial Protection Bureau's (CFPB) provision for leadership by a single individual who is only removable for cause violates the separation of powers because the President has the power to remove an agency head at-will. 140 S.Ct. at 2197.

The Supreme Court subsequently held in *Collins v. Yellin,* that the Federal Housing Finance Agency's (FHFA) structure, which also has a single director whom the President can remove only for cause, violates the separation of powers. *Collins,* 141 S.Ct. 1761, 1783 (2021). While *Seila* seemed to draw a distinction regarding the unconstitutionality of removal restrictions for single-head independent agencies that wield "significant executive power," *Collins* appears to have abandoned that distinction.

On July 8, 2021, the Justice Department's Office of Legal Counsel (OLC) issued an opinion that a similar removal restriction for the SSA Commissioner violates the separation of powers in light of *Seila* and *Collins*. It concluded the President may remove the SSA Commissioner at will, notwithstanding the statutory removal limitation. "The Constitutionality of the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8, 2021).[4]

Acting Commissioner Kijakazi agrees that 42 U.S.C. § 902(a)(3)'s removal restriction on the SSA Commissioner violates the separation of powers, but argues that, without more, this does not justify setting aside an unfavorable SSA disability benefits determination.

The court agrees with the parties that 42 U.S.C. § 902(a)(3)'s removal restriction violates the separation of powers under *Collins* and *Seila*. The court must now turn to Plaintiff's

---

[4] *See*
*https://www.justice.gov/olc/file/1410736/download#:~:text=In%20that%20decision%2C%20the%20Court,5491(c)(3),* last visited March 17, 2022.

1  requested remedy: reversal and remand for a new hearing and decision. *See Seila*, 140 S.Ct. at

2  2207 ("Having concluded that the CFPB's leadership by a single independent Director violates

3  the separation of powers, we now turn to the appropriate remedy.").[5]

4      Plaintiff argues that the Commissioner delegates authority to the ALJ and Appeals

5  Council, and their actions denying Plaintiff's claim for disability benefits were completed within

6  the unconstitutional tenure of Commissioner Saul. Plaintiff contends that because of the

7  unconstitutional removal provision, Saul had no authority to delegate to the ALJ or Appeals

8  Council in this case.

9      The plaintiff shareholders in *Collins* similarly sought an order setting aside the third

10 amendment that was at issue in that case, asserting that it "was adopted and implemented by

11 officers who lacked constitutional authority and that their actions were therefore void *ab initio*."

12 *Collins*, 141 S.Ct. at 1787.

13     *Collins* concluded that there was "no reason to regard any of the actions taken by the

14 FHFA in relation to the third amendment as void" because "[a]ll the officers who headed the

15 FHFA during the time in question were properly *appointed*." *Collins*, 141 S.Ct. at 1787

16 (emphasis original). While "the statute unconstitutionally limited the President's authority to

17 *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed

18 method of appointment to that office." *Id.*

19

20

21

22

23

---

[5] Plaintiff does not argue that the entirety of the legislation governing SSA is unconstitutional. Under *Seila*, it appears the unconstitutional removal restriction is severable from the remainder of the provisions. *See Seila*, 140 S.Ct. at 2209-2211. The OLC opinion likewise concludes that the removal restriction does not affect the validity of the remainder of the provisions. "The Constitutionality of the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8, 2021) (citing *Seila*, 140 S.Ct. at 221).

Plaintiff also briefly mentions *Lucia v. SEC*, 138 S.Ct. 2044 (2018). In *Lucia,* the plaintiff challenged an administrative proceeding of the Securities and Exchange Commission (SEC) before an ALJ on grounds the ALJ was unconstitutionally *appointed* in violation of the Appointments Clause. The Supreme Court agreed. The ALJ had been appointed by *SEC* staff members, but the Appointments Clause required that ALJs had to be appointed by the President, a court of law, or the head of a department. *Luca*, 138 S.Ct. at 2050-52. The appropriate remedy in that case was a new hearing before a properly *appointed* ALJ. *Id*. at 2055.

This case is distinguishable from *Lucia*. Here, like *Collins*, but unlike *Lucia*, while the statute at issue may unconstitutionally limit the President's power to *remove* the Commissioner, there is no asserted defect in the Commissioner's *appointment,* and thus, "no reason to regard any of the actions taken by the [SSA in relation to Plaintiff's disability determination] as void." *Collins*, 141 S.Ct. at 1787. As the Court pointed out in *Collins*, *Lucia* involved an "exercise of power that the [Government] actor did not lawfully possess," *Collins*, 141 S.Ct. at 1788 (citations omitted), but that is not the case here.

Like *Collins,* the court similarly finds that the existence of the unconstitutional removal provision alone does not justify the remedy Plaintiff seeks here. *See Decker*, 8F.4th at 1137 (noting that *Collins* is "controlling with respect to the remedy for any unconstitutional provision in the removal provisions" and the Supreme Court found undoing the agency action on the basis of the unconstitutional removal provision was unwarranted).

While the Supreme Court found there was no reason for the third amendment to be completely undone in *Collins*, it acknowledged "[t]hat does not necessarily mean … that the shareholders have no entitlement to retrospective relief." *Id*. "[I]t is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the

unconstitutional restriction on the President's power to remove a Director of the FHFA could

have such an effect cannot be ruled out." *Id*. The court gave two examples of when this might be

the case:

> Suppose, for example, that the President had attempted to remove a
> Director but was prevented from doing so by a lower court
> decision holding that he did not have 'cause' for removal. Or
> suppose that the President had made a public statement expressing
> displeasure with actions taken by a Director and had asserted that
> he would remove the Director if the statute did not stand in the
> way. In those situations, the statutory provision would clearly
> cause harm.

*Id*. at 1789.

The Court remanded for the lower court to resolve whether the "unconstitutional removal

provision inflicted harm" *Id*.

In *Decker*, the Ninth Circuit subsequently confirmed that "the key … is demonstrating

that the unconstitutional provision actually caused the plaintiff harm." *Decker*, 8 F.4th at 1137

(citing *Collins*, 141 S.Ct. at 1788-89). The Ninth Circuit concluded that "[a]bsent a showing of

harm, we refuse to unwind the decisions below." *Id*.

In her reply brief, Plaintiff argues she was harmed in that she did not receive the

constitutionally valid adjudicative process she was entitled before the ALJ and the Appeals

Council, who received their delegation of authority from Commissioner Saul. Plaintiff further

argues that President Biden would have fired Commissioner Saul absent the unconstitutional

statutory removal provision, pointing out that President Biden terminated Commissioner Saul the

day after the OLC opinion was issued. Plaintiff also points to a statement from the White House

regarding Commissioner Saul, stating:

> Since taking office, Commissioner Saul has undermined and
> politicized Social Security disability benefits, terminated the
> agency's telework policy that was utilized by up to 25 percent of
> the agency's workforce, not repaired SSA's relationships with

> relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

(ECF No. 21 at 8, citing https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner.)

The news article Plaintiff cites attributes this statement to an unidentified White House official, and not directly to the President. Plaintiff acknowledges that these facts do not irrefutably confirm that President Biden wanted to remove Commissioner Saul from office immediately. Nor has Plaintiff presented concrete evidence that the *President* expressed his displeasure with Saul, or that the *President* said he would remove Saul if the statute did not stand in his way. Plaintiff has not cited a lower court case that blocked the President's removal of Saul. Moreover, Plaintiff does not identify a particular due process violation that had an effect on her disability determination.

In sum, the court finds Plaintiff's proffer of harm is simply too tenuous, and there is no basis for remand and a new hearing based on Plaintiff's separation of powers argument. In light of this conclusion, the court need not reach the Acting Commissioner's remaining arguments on this issue.

///

///

20

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 16) is **GRANTED** insofar as the court concludes the ALJ erred in disregarding all of the medical opinions that Plaintiff can perform a range of light work and drawing his own conclusions that Plaintiff could perform medium work without the support of a medical assessment.

The Commissioner's cross-motion (ECF No. 19) is **DENIED**;

This matter is **REMANDED** for further proceedings consistent with this Order

The Clerk shall enter **JUDGMENT** accordingly.

**IT IS HEREBY ORDERED.**

Dated: March 18, 2022

_____
Craig S. Denney
United States Magistrate Judge